IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:16-CV-141-FL

| | |
|---|---|
| BRENNA M. SATTERWHITE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | ORDER |
| ALL STARZ CHILDREN'S ACADEMY, ) | |
| INC. and ALL STARZ CARY, INC., ) | |
| ) | |
| Defendants. ) | |

This matter is before the court on defendants' motions for summary judgment (DE 56, 60). Plaintiff has responded in opposition, and defendants have replied. In this posture, the issues raised are ripe for ruling. For the following reasons, defendants' motions are granted.

### STATEMENT OF THE CASE

Plaintiff commenced this employment discrimination action in Wake County Superior Court on April 1, 2016, asserting that defendants terminated her employment as an assistant teacher at one of defendants' child care centers because of her pregnancy, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII"). Plaintiff seeks back pay with benefits, compensatory and consequential damages, punitive damages, interest, attorneys' fees, and costs.

Defendants removed to this court, which allowed plaintiff's claim to proceed on March 28, 2017, upon denial of defendants' motion to dismiss for failure to state a claim and lack of subject matter jurisdiction.

Defendants filed the instant motions for summary judgment on November 20, 2018. In support of its motion, defendant All Starz Children's Academy, Inc., ("All Starz"), relies upon a statement of material facts and appendix including the following: 1) depositions of plaintiff and its employees, Joe Kugler ("Kugler"), Brook Goin ("Goin"), and Katie Wojtanik ("Wojtanik"), as well as Federal Rule of Civil Procedure 30(b)(6) deposition of defendant All Starz ("30(b)(6) Deposition"); 2) defendant All Starz's discovery responses; 3) plaintiff's charge of discrimination submitted to the Equal Employment Opportunity Commission ("EEOC") and intake questionnaire; 4) a response by Kugler to plaintiff's EEOC charge ("Response to EEOC Charge"); 5) email correspondence between plaintiff and Kugler in advance of plaintiff's start of employment; 6) a paycheck and reimbursement check issued to plaintiff; and 7) an EEOC dismissal and notice of rights to sue. In support of its motion, defendant All Starz Cary, Inc., ("All Starz Cary"), relies upon and incorporates the arguments and exhibits of defendant All Starz, as well as additional excerpts of the same.

Plaintiff responded in opposition to the instant motions, relying upon a statement of material facts and the following exhibits thereto: 1) additional excerpts of plaintiff's deposition, as well as excerpts of depositions of Kugler, Wojtanik, Goin, and the 30(b)(6) deposition; 2) employment and personnel records of defendant All Starz and All Starz Cary; 3) defendants' job posting records; 4) a declaration by plaintiff; and 5) a job application and offer letter for defendants' employee, Lauren Pegram ("Pegram").

In reply defendants rely upon responsive statement of facts, as well as the following exhibits in addition to those previously described: 1) additional excerpts of plaintiff's deposition, as well as excerpts of depositions of Kugler, Wojtanik, Goin, and the 30(b)(6) deposition; 2) redacted

excerpts of plaintiff's medical records; 3) additional interrogatory responses; and 4) email correspondence with defendants' employee Jessica Anderson ("Anderson"). Defendant All Starz Cary additionally relies upon further deposition excerpts of Kugler and Wojtanik, as well as redacted declaration pages of individual insurance policies of All Starz and All Starz Cary.

## STATEMENT OF FACTS

The undisputed facts and disputed facts viewed in the light most favorable to plaintiff may be summarized as follows.

Defendant All Starz is a North Carolina corporation that was formed in 2003 and is owned 100% by husband and wife Daniel and Terri Kugler. (Def's Stmt. (DE 57) ¶ 1).[1] All Starz opened a preschool located in Morrisville, North Carolina in 2008 (the "Morrisville location"). (Id. ¶ 2). All Starz, holder of a North Carolina Division of Child Development and Early Education Five Star Rated License, has fourteen classrooms and provides childcare services for up to 228 children aged six weeks to five years of age, Monday through Friday. (Id. ¶ 3). In May 2015, All Starz employed staff of approximately forty-three individuals at the Morrisville location, comprised almost exclusively of females. (Id. ¶ 4).

All Starz Cary is a North Carolina corporation owned by Daniel and Terri Kugler that opened a preschool located in Cary, North Carolina in March 2015 (the "Cary location"). (Id. ¶ 6). All Starz Cary has thirteen classrooms and provides childcare services for up to 214 children aged six weeks to five years of age, Monday through Friday. (Id. ¶ 7). All Starz Cary employs approximately thirty individuals at the Cary location. (Id. ¶ 8).

---

[1] Where facts set forth in the parties' statements of material facts are not disputed, the court cites to the first instance where the fact is stated.

On April 16, 2015, plaintiff[2] responded to an All Starz job posting on Craigslist seeking an assistant two-year-old teacher. (Id. ¶ 9). Shortly thereafter, Kugler, one of the Directors at All Starz and the sole decision maker with regard to hiring and firing, contacted plaintiff by telephone to discuss her resume and to ask her to conduct an in-person interview for the position. (Id. ¶ 10). Plaintiff agreed, and, on or about April 23, 2015, she was interviewed by Kugler and Wojtanik, who serves as the Director of Operations at All Starz. (Id. ¶ 11). During the interview, which lasted several hours, the Plaintiff was given an opportunity to observe two classrooms. (Id. ¶ 12).

During the interview, Kugler and Wojtanik did not inquire as to whether plaintiff was pregnant, nor did plaintiff disclose the information to Kugler, Wojtanik, or anyone at All Starz. (Id. ¶ 13). However, plaintiff did inform Kugler and Wojtanik that she would be on vacation from June 15 through June 19, 2015, and inquired as to whether this would be an issue. (Id. ¶ 14). Kugler, after consulting with individuals responsible for scheduling, determined that All Starz could accommodate plaintiff's vacation. (Id. ¶ 15).

On May 5, 2015, All Starz offered plaintiff a position as an assistant teacher in one of its classrooms, starting at an hourly wage of $13.00 an hour. (Id. ¶ 16). Plaintiff accepted All Starz's offer. (Id.). All Starz informed plaintiff that she would need to take several actions in advance of commencing her employment, including undergoing a tuberculosis test, completing an online background check, and having her fingerprints taken. (Id. ¶ 17).

Plaintiff's first day of employment at All Starz was Wednesday, May 27, 2015. (Id. ¶ 18). Plaintiff was initially placed in a classroom to assist a "Lead Teacher," Goin. (Id. ¶ 19). On her first

---

[2] Since transmitting her EEOC charge, plaintiff legally changed her name to Brenna Satterwhite Turner. (Pl's Stmt. ¶ 48). For ease of reference, the parties continue to refer to plaintiff as "Satterwhite," and the court refers to her herein as plaintiff.

day of work, plaintiff was not asked, nor did she disclose, that she was pregnant to anyone at All Starz, including Kugler and Wojtanik. (Id. ¶ 20). Plaintiff returned on May 28 and 29, 2015, again working alongside Goin. (Id. ¶ 21).

While plaintiff has testified that Goin inquired as to plaintiff's pregnancy status on May 28, 2015, Goin does not recall plaintiff, much less inquiring of her pregnancy. (Id. ¶ 22). On May 29, 2015, Kugler and Wojtanik had a conversation regarding employee scheduling for All Starz for the upcoming week as well as the student enrollment at each of the schools. (Id. ¶ 23).

That same day, Wojtanik informed plaintiff that, due to the opening of the All Starz Cary school, All Starz did not have enough students and enough money to provide plaintiff with hours. (Id. ¶ 27). Wojtanik said "everything was fine in the classroom and [plaintiff] was great with the kids." (Pl's Dep. 58).[3] At the end of the conversation, Wojtanik told plaintiff "you can call back next week and see if we have hours for you," and Wojtanik told plaintiff to call back the next Wednesday, June 3, 2015. (Id.). During this conversation, plaintiff did not disclose her pregnancy to Wojtanik, nor did Wojtanik inquire as to whether plaintiff was pregnant. (Def's Stmt. (DE 57) ¶ 29).

Plaintiff called Wojtanik on Wednesday, June 3, 2015, and asked about her hours. Wojtanik "apologized again for not having hours for [plaintiff]." (Pl's Dep. 62). Wojtanik stated to plaintiff that "there was no position," and "no hours," but "if it will be helpful [All Starz] can reimburse [plaintiff] for all the things that [plaintiff] had done prior to starting work," such as fingerprinting

---

[3] Page numbers in citations to depositions reference the page number shown on the face of the deposition transcript, and not page numbers of a particular docket entry (DE) number, where excerpts of depositions in some instances are filed in multiple locations in the record and in duplicate form. By contrast, page numbers in citations to other record documents (with a corresponding docket entry "DE" number indicated) reference the page number specified in the court's electronic case filing system and not the page number showing on the face of the underlying document, if any.

5

and background check. (Id.).

Plaintiff executed an Equal Employment Opportunity Commission ("EEOC") intake questionnaire on June 17, 2015, stating that she was discharged by All Starz on May 29, 2015, and that she was discriminated due to her pregnancy. (Intake Questionnaire (DE 58-13) at 3-6). Plaintiff transmitted a charge of discrimination and the intake questionnaire on July 31, 2017, to the EEOC. (EEOC Charge (58-12); see Intake Questionnaire (58-13) at 2).

On September 10, 2015, Kugler prepared and submitted a response to plaintiff's EEOC charge, stating that he was unaware of plaintiff's pregnancy prior to receiving plaintiff's EEOC charge. (Def's Stmt. (DE 57) ¶¶ 44-45). Kugler's response provided an explanation regarding the lack of hours available for plaintiff. (Id. ¶ 46).

During the time period that plaintiff worked for All Starz, between May 27 and May 29, 2015, Kugler and Wojtanik did not inquire as to whether plaintiff was pregnant, and plaintiff did not inform them that she was pregnant. (Id. ¶¶ 35-38). Plaintiff did not overhear Goin – the sole individual to whom plaintiff alleges she disclosed her pregnancy – discuss plaintiff's pregnancy with anyone. (Id. ¶ 39).

Additional facts will be discussed in the analysis herein.

## COURT'S DISCUSSION

A.  Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes

demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (internal quotation omitted). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party).

"[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir.

7

2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489-90.

B.     Analysis

To prove a claim of discrimination absent direct evidence of discriminatory animus,[4] a plaintiff may proceed under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under this framework, "[t]o establish a prima facie case of discriminatory discharge, [a plaintiff] must show: (1) that [s]he is a member of a protected class; (2) that [s]he suffered from an adverse employment action; (3) that at the time the employer took the adverse employment action [s]he was performing at a level that met [the] employer's legitimate expectations; and (4) that the position was filled by a similarly qualified applicant outside the protected class." King v. Rumsfeld, 328 F.3d 145, 149 (4th Cir. 2003).

If plaintiff establishes a prima facie case, the burden shifts to defendant "to produce a legitimate, non-discriminatory reason for the adverse employment action." Guessous v. Fairview Prop. Investments, LLC, 828 F.3d 208, 217 (4th Cir. 2016). If defendant meets this burden of production, then plaintiff bears the burden of demonstrating "that the legitimate reasons offered by the defendant-employer were not its true reasons, but were a pretext for discrimination." Westmoreland v. TWC Admin. LLC, 924 F.3d 718, 729 (4th Cir. 2019).

"In order to show pretext, a plaintiff may show that an employer's proffered nondiscriminatory reasons for the termination are inconsistent over time, false, or based on mistakes

---

[4]     Plaintiff does not advance her claim in this case based upon direct evidence of discriminatory animus, but rather argues that she meets the standard of showing a prima facie case and pretext, under McDonnel Douglas, 411 U.S. 792. (See Pl's Mem. (DE 66) at 5-16).

8

of fact." Haynes v. Waste Connections, Inc., 922 F.3d 219, 225 (4th Cir. 2019); see Westmoreland, 924 F.3d at 727 (stating that a plaintiff may demonstrate pretext by showing "the defendant's explanation is unworthy of credence"). A plaintiff "must cast sufficient doubt upon the genuineness of the explanation to warrant a jury's consideration of possible alternative and discriminatory motivations for the firing." Guessous, 828 F.3d at 218 (quotations omitted).

At the same time, "when an employer gives a legitimate, nondiscriminatory reason for discharging the plaintiff, it is not [the court's] province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." Laing v. Fed. Exp. Corp., 703 F.3d 713, 722 (4th Cir. 2013) (quotations omitted). An "employee must present evidence reasonably calling into question the honesty of his employer's belief." DeJarnette v. Corning, Inc., 133 F.3d 293, 299 (4th Cir. 1998). "[T]his Court does not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination." Id. (quotations omitted). In evaluating a justification for an adverse employment action, "it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." Id. (quotations omitted).

In this case, plaintiff has met the initial burden of showing a genuine issue of fact as to the elements of the prima facie case. She suffered from an adverse employment action, because, viewing the facts in the light most favorable to plaintiff, Wojtanik told her she did not have any hours for plaintiff to work and that she did not have a position in which plaintiff could work. (Pl's Dep. 58, 62). Plaintiff was a member of a protected class at that time, because she was pregnant. (Pl's Decl. ¶ 2). Plaintiff met the employer's legitimate expectations at that time because her employer informed her that "everything was fine in the classroom and [plaintiff] was great with the

9

kids." (Pl's Dep. 58). Finally, the assistant teacher position in which plaintiff was working for three days eventually was filled by another qualified individual who was not pregnant. (See Defs' Time Card Summary (DE 68-10) at 68-73).

Defendants argue that plaintiff has not shown an adverse employment action or that she met legitimate expectations, because Wojtanik asserts she told plaintiff on June 3, 2015, to call back a second time after plaintiff's vacation to see if more hours were available, and plaintiff failed so to do. (See Wojtanik Dep. 60). For purposes of the instant motion, however, the court does not credit Wojtanik's assertion because it conflicts with plaintiff's account of their conversation. (See Pl's Dep. 62).

Defendants also suggest that plaintiff is not a member of a protected class because there was no evidence that her employer, All Starz, knew plaintiff was pregnant. Defendants cite no binding authority that this is the proper measure for the first element of a prima facie case of pregnancy discrimination. Rather, defendants address employer knowledge in the context of discussing "direct" evidence of discriminatory intent, which is a theory on which plaintiff does not proceed. (Def. All Starz Mem. (DE 59) at 8; see Def. All Starz Cary Mem. (DE 63) at 5). In any event, the court addresses further below defendants' knowledge of pregnancy at a later stage in the McDonnell Douglass burden shifting analysis. In sum, for purposes of the instant motion, plaintiff has satisfied the "low threshold" of a prima facie case. Blue v. U.S. Dep't of Army, 914 F.2d 525, 536 (4th Cir. 1990).

In response to plaintiff's prima facie case, defendants have met their burden of producing a nondiscriminatory reason for plaintiff's adverse employment action. At the time Wojtanik informed plaintiff that there were no hours available to work, Wojtanik explained to plaintiff that

"with [defendants'] opening the new school that they just didn't have enough students and enough money to pay teachers and teacher assistants." (Pl's Dep. 58). Kugler explained in response to the EEOC charge that "[t]he decision to reduce [plaintiff's] hours was made based on her lack of seniority and lower enrollment numbers while trying to rebound from building a new school and a very low cash flow." (Resp. to EEOC Charge (DE 58-2) at 3).

Accordingly, the burden rests upon plaintiff to demonstrate a genuine issue of fact that the reasons given by defendants are pretextual. Here plaintiff has failed so to do, where she has not brought forth evidence that the reasons given were false, inconsistent, unworthy of credence, or other evidence to cast sufficient doubt upon the genuineness of the explanation to merit jury consideration of her claim.

There are a number of undisputed contemporaneous facts corroborating defendants' reasons given that preclude a determination of pretext under the circumstances of this case. In particular, enrollment openings at the Morrisville campus, where plaintiff was working, "jumped up to seven or eight spots" on June 1, 2015, the equivalent to "two or three teachers['] salaries." (30(b)(6) Dep. 27, 146). Some students at the Morrisville campus who were set to graduate at the end of June instead started to leave at the end of May. (Kugler Dep. 74). Plaintiff was not the only employee whose hours were impacted by enrollment numbers. Dana De Angelo "was supposed to start on June 1 and she didn't start until the week of June 8 because of the low enrollment numbers on June 1." (Kugler Dep. 153). After May 28, 2019, there were no job openings posted for a period of 16 days, with exception of a cook position, in contrast to five previous months where defendants posted jobs "every single day" or nearly every workday. (Kugler Dep. 72-73, 167-168; Craigslist Account Listing (DE 68-9) at 5). On May 29, 2019, when plaintiff was notified of a reduction in her hours,

11

plaintiff was the least senior full time employee working at the Morrisville campus. (30(b)(6) Dep. 124; All Starz Empl. Rec (DE 68-4) at 13).

Plaintiff asserts several bases for pretext, all of which are insufficient to create a genuine issue of fact. For example, plaintiff asserts that defendant All Starz "was aware of its enrollment and financial circumstances at the time of [plaintiff's] job offer and those circumstances did not materially change during [plaintiff's] brief tenure with Defendant." (Pl's Mem. (DE 66) at 15). This assertion draws inferences that are not plausible in light of undisputed facts in the record, including a jump in enrollment openings by June 1, 2015, early departures of students at the end of May, at least 16 day gap in relevant job postings, and a "hiring frenzy" for the new school in Cary continuing through May, 2015. (30(b)(6) Dep. 27, 146; Kugler Dep. 72-74). These facts combined to create "a real, real difficult time on top of [defendants'] normal turnover," consistent with the decision to reduce plaintiff's hours. (Kugler Dep. 75).

Plaintiff also asserts that defendant All Starz "hired non-pregnant employees immediately before and after reducing [plaintiff's] hours to zero." (Pl's Mem. (DE 66) at 15; Pl's Stmt. (DE 67) ¶¶ 25, 87). This assertion, however, oversimplifies and mischaracterizes the evidence in several significant respects. First, where defendant All Starz "does not require prospective or current employees to disclose their pregnancy status," it is speculative whether other employees hired before or after plaintiff were "non-pregnant" as plaintiff asserts. (Interrog. Resp. (DE 58-4) at 5). Indeed, one hired employee listed by plaintiff, Jessica Murdock, disclosed to Kugler that she was pregnant, and she started at All Starz Cary on June 3, 2015. (Resp. to EEOC Charge (DE 58-2) at 4). Second, several other hires plaintiff mentions were for positions at All Starz Cary. (Interrog. Resp. (DE 74-7) at 2). Several at the Morrisville location were for different positions, such as floaters or in the

kitchen. (All Starz Empl. Rec (DE 68-4) at 18 (Dana D'Angelo, Ashley Milholen, and Sara LaPort)). One remaining hire at Morrisville, Marisa Iritani, started in a "SENIOR C" ("Pre-K") classroom on June 11, 2015, a different position. (Id.; Kugler Dep. 194; 30(b)(6) Dep. 165). The other, Lauren Pegram, started, June 15, 2015, the week that plaintiff had planned a vacation. (Id.). Both qualified as "7-point" teachers and their pregnancy status was unknown, although both were 24-25 years old. (Id.). In sum, the circumstances of the other hires cited by plaintiff do not permit an inference that the reasons given for reduction of plaintiff's hours were false, non-credulous, or otherwise pretext for pregnancy discrimination.

Plaintiff next asserts that defendant All Starz cannot "identify another instance where an employee's hours were indefinitely reduced to zero," and its "past practice of adjusting an employee's hours to address enrollment and financial circumstances was wholly inconsistent" with the manner plaintiff was treated. (Pl's Mem. (DE 66) at 15). These assertions are insufficient to show pretext for several reasons.

First, defendant All Starz in fact reduced several full-time employee's hours to zero when its Morrisville location opened in 2008. (Kugler Dep. 157-158). Second, circumstances in which plaintiff's hours were reduced also involved the opening of a new location, this time All Starz Cary, and corresponded with the earlier "hiring frenzy" for that location. (30(b)(6) Dep. 27, 146; Kugler Dep. 72-74). Third, because of the unique circumstances in which plaintiff's hours were reduced, including plaintiff's status as a recent hire and the fact that she had already scheduled a week of vacation, comparison to other instances where defendants instead asked its teachers to "leave early, come in late, take time off, etc.," does not demonstrate pretext in this instance. (Resp. to EEOC Charge (DE 74-6) at 3; see Kugler Dep. 114-115, 152-154). In sum, the isolated nature of plaintiff's

13

reduction in hours does not give rise to a plausible inference of pretext.

Plaintiff asserts that she has demonstrated pretext also because defendant All Starz "was aware it would be receiving approximately a quarter million dollars within days of the decision to reduce [plaintiff's] hours," and it "distributed $135,000 to owners between the time that the Cary campus opened [in March] and the time of the adverse action" in June. (Pl's Mem. (DE 66) at 15). These assertions are insufficient to show pretext for several reasons. First, the reference to a "quarter million dollars" is the approximate amount of tuition received each month; it fluctuates based upon whether there is "full enrollment" or missing students (30(b)(6) Dep. at 68-69), which was the circumstance faced by defendant All Starz at the start of June, 2015. (Id. at 27, 146; Kugler Dep. 74, 153). Second, plaintiff's assertions do not take into account increased expenses due to the opening of the Cary location. (Kugler Dep. 145). Third, "all payments through distributions at this particular point in time [were] repayment[s] of loans" to the individual owners and Kugler, who had paid out of pocket for a significant portion of the development, construction, and bringing online of the Cary location. (30(b)(6) Dep. at 200-205; Kugler Dep. at 81-82).

In sum, plaintiff's asserted grounds for showing pretext are insufficient to demonstrate that the reasons given by defendant All Starz for plaintiff's reduction in hours were false, inconsistent, unworthy of credence, or otherwise doubtful to permit jury consideration of her claim. The inference of pretext that plaintiff seeks to draw from the evidence plaintiff cites is not "within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [jury] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace, 681 F.2d at 241.

In addition to lack of pretext, plaintiff has otherwise failed to demonstrate pregnancy

discrimination motivated her adverse employment decision. See Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 146-147 (2000) (stating that "[t]he ultimate question is whether the employer intentionally discriminated," and plaintiff must bring forth evidence to "establish that the plaintiff's proffered reason is correct"); Westmoreland, 924 F.3d at 727. In particular, it is undisputed that plaintiff did not disclose her pregnancy to any decisionmaker, and no decisionmaker at defendants inquired as to plaintiff's pregnancy status. (Def's Stmt. (DE 57) ¶¶ 13, 20, 29, 35-38). Plaintiff also did not hear Goin discuss plaintiff's pregnancy with anyone after she disclosed it to Goin. (Id. ¶ 42). While plaintiff asserts that her pregnancy status was "apparent" or could have been "presumed" due to the late stage of her pregnancy, inquiries by others, and a photograph, (Pl's Mem. (DE 66) at 8-9), this disputed factual assertion is insufficient to raise an inference of discrimination under the unique context of plaintiff's workplace. Namely, all teachers at defendant All Starz are female, many are at childbearing age, and some have been pregnant before hire or during their employment with defendant All Starz. (See, e.g., All Starz Empl. Rec (DE 68-4) at 3-35; Interrog. Resp. (DE 58-4) at 2-5; Resp. to EEOC Charge (DE 58-2) at 4-5). As noted previously, defendant All Starz "does not require prospective or current employees to disclose their pregnancy status." (Interrog. Resp. (DE 58-4) at 5). At the same time, it does "try to encourage women with children to work with [it] by offering all of [its] teachers who are passed their 90 day probationary period with [it] the opportunity to enroll their children with [its] school at 50% off" tuition, which can add up to approximately $8,750.00 per year. (Resp. to EEOC Charge (DE 58-2) at 3).

In sum, in light of all the circumstances, plaintiff has failed to demonstrate a genuine issue of material fact that pregnancy discrimination was the true reason for her reduction in hours. Accordingly, for this reason, in addition to plaintiff's failure to demonstrate a genuine issue of fact

as to pretext, the court must grant summary judgment to defendants on plaintiff's discrimination claim. Because summary judgment must be granted on this basis, the court does not reach the additional argument raised by defendant All Starz Cary that summary judgment is warranted because it was not plaintiff's employer.

## CONCLUSION

Based on the foregoing, defendants' motions for summary judgment (DE 56, 60) are GRANTED. The clerk is DIRECTED to close this case.

SO ORDERED, this the 6th day of August, 2019.

                                            LOUISE W. FLANAGAN
                                            United States District Judge